Good morning. John Downing for the appellant. Just go ahead. Okay. Our main issue in this case is with the immigration judge's adverse credibility finding. And I think that from the transcript and from a review of the record, it's clear that the immigration judge, not unlike the immigration judge in the Garabias case, was not acting as a neutral arbitrate arbiter and that the difficulties that the appellant had in his testimony were due in large part to the constant interrupting and the translation difficulties and due to a fact which is not present in the Garabias case, the fact that this is a 17-year-old Chinese, I guess an adult, a minor, who came from a farm family and here he was in court in the United States. Were you present for the hearing No. Mr. Liu did. I'm sorry? Mr. Liu did. There were some troubling aspects about what actually took place at the hearing itself, the translation. Yeah. I know that Mr. Liu, who I think I was working with at the time, you know, is fluent in mandarin. And there were some issues with the translation that he raised and that I think were even accepted by the translator, which is not uncommon in some of these cases. But I think so that's One of the points that the I.J. makes is that there was at various times in the petitioner's answers to the questions, there was substantial delay in his response. Yes, Your Honor. And obviously, sitting as a court of appeal, it's pretty hard to measure the timing of those responses. And I would just But isn't it significant that the I.J. tells us about it in her ruling? I think it would be. I guess it's significant. But I think it's also, if you review the transcript, it's also somewhat understandable given that there looks like it was very difficult both for counsel to present the matter and for the appellant to respond. And I think with the interruptions, with the translations, I don't think that these delays or that, you know, arise to the level of an adverse credibility determination. Doesn't she go out of her way to give us something other than the cold record, not only the pauses, but Mr. Chen looking around, you know, she theorizes he's searching for an answer? Do these come at points where there's apparent contradiction in his testimony? Doesn't she go out of her way to give the appellate court something more than the cold record? I guess she does, but I think that even with the cold record and even, I mean, even with this explanation of these pauses and looking around, I think if you put yourselves in the shoes of a 17-year-old boy, really, in a foreign land, in a foreign court, with a judge sort of, you know, I don't know, sort of peering down at you or, you know, interrupting you, I think that these things are understandable and there's equally plausible explanations. I don't think that, you know, an American boy in a court in China wouldn't have some of the – would be having the same difficulties in presenting his story, essentially. Now, there were translation difficulties. There's no question about that. But at one point, I think at two points, the I.J. asks the lawyer, are you satisfied with the translation, words to that effect, and he says yes. Well, I think there was at one point, you know, a difference that was agreed upon with respect to the wording. And again, I think that the difficulties in the translation are more relevant to the issue of his – to the adverse credibility determination as opposed to something not being translated correctly that affects the, you know, that affected substantively the court's decision. In that, you know, it's just one more factor going in there that, you know, here you have a 17-year-old boy from the country and not from our country, from a different country, and yes. Do you think that the translation difficulties had any effect on the I.J.'s assessment of his credibility? Yes, I do. I mean, I think in that here you have not – just having been familiar with presenting cases with a translator, it's very difficult. You know, sitting through many depositions with translators and sitting through court hearings with translators, there's automatically sort of a gap between, you know, the question and the answer – or the question and the translation and the answer, then the translation back. So, I mean, I think it's more relevant in that as an explanation for why there were these, perhaps, pauses or why this testimony was so chopped up that eventually the I.J. came up with this – with an adverse credibility determination. So I think it's more relevant in that as a – in that – in that it just gives a picture of, you know, just one more reason why it was difficult for this witness to – to testify clearly and consistently and all those things. So – and our position is that this adverse credibility determination is tied in and intertwined with the asylum decision, and it cannot be, you know, untied from that, and we believe that it should be remanded to the BIA to consider the asylum position without this adverse credibility determination. And with respect to the asylum – Suppose we're correct. Can't we take the testimony as given and determine whether those facts are sufficient? Does it have to go back to the BIA, assuming we disagree with the credibility determination? I believe that it would have to go back to the BIA to – to have them evaluate it. I mean, they didn't do any – you know, they didn't issue a separate decision to begin with for them to evaluate it without the adverse credibility determination. And I think there are sufficient facts in the record to support the position of appellant that he is entitled to asylum. And those – and essentially, you know, this – this fellow had three strikes against him. One, his past issues with his family's violation of the one-child-per-family policy and his being expelled from school. Two, the circumstances in which he departed from China. And three, his involvement with the democracy movement here. So I think it's a different – you know, when you combine all three of those together, I think that he did present enough evidence to – to – to – that he was entitled to asylum or withholding of removal. Would you like to save the balance of your time? I'll save the balance of my time.  Good morning, Your Honors. I'm Greg Mack, Counsel for the Respondent, the Attorney General of the United States. In this case, the standard of review on top of the demeanor findings here point in the direction of denying the petition for review. The petitioner has pointed to no evidence in this record that compels a contrary conclusion to the immigration judge's adverse or negative credibility determinations in this case. In this case, the immigration judge took pains to note that demeanor evidence isn't the end-all and be-all, noting that there are instances where cultural differences may raise issues with respect to demeanor findings. The immigration judge also took pains to note that this was, indeed, a 17-year-old petitioner in this particular case. But even taking those facts into account, the 17-year-old as well as the cultural differences that may be in play here, the immigration judge still went on to make demeanor findings in that she noted that the demeanor was remarkable in this instance. And those are – are essentially a trial judge's determination on the record being present in the courtroom. So what extent do you think the translation difficulties affected the IJA's credibility assessment? I don't think they affected them at all, and especially in the sense that the counsel for the alien in this case agreed with the translations that ultimately played out. So if there were objections with respect to the translation and how they affected the overall testimony, it was for counsel at that time to raise before the immigration judge and have it resolved. You would agree, wouldn't you, though, that at various points throughout the transcript, throughout the hearing, the translator had difficulties translating? Yes. I agree with that. It stands out in this particular record. Right. The translator did have difficulty, and the translator also harkened back, I guess, to an earlier case in the week where he had some difficulties translating. But even taking that into account, the immigration judge was there, was able to take those translation difficulties into account, consulted with the aliens' counsel with respect to the translations, and ultimately still noted that demeanor here was remarkable. And, again, the immigration judge took pains to note that demeanor isn't the end all and be all, noted the applicant's age, but went on to say that she just didn't find this alien's testimony plausible or credible. And in that direction, Your Honor, again, it points towards denying this petition for review. The immigration judge went over the alien's testimony with respect to the plausibility of him testifying about being expelled from school, and yet his mother being having a sterilization before he was expelled from school. So how could he be in school when his mother had been sterilized, and did him go on to claim that he was not in school at that time or he had been expelled from school? How old was he when that happened? Well, there's some difficulty with that respect, Your Honor. He says he was 17 years old at the time, and he also noted that he was in ninth grade at the time. So he couldn't pinpoint the exact facts on when that occurred, and that was one of the things that the immigration judge noted is that he couldn't pin down which particular year that this occurred. And yet he was clear about the date that he was going to register, February 28, 1997, at one point in the testimony. And then when he recognized that it couldn't be the case because it didn't jive with when his mother was sterilized, he started equivocating on his testimony in that regard. So there's some difficulty there. And in this case, in all these cases, the alien certainly bears the burden of proof. And in this case, the immigration judge noted that we have credibility problems, we have identity problems, and then on top of that, we have demeanor issues. And again, this is in a case where the immigration judge is essentially a trial judge, and this Court is looking at the record from a trial judge's comprehensive, thorough, detailed demeanor and credibility findings. And this Court shouldn't on that record, on top of the standard review in this case, reverse the immigration judge's credibility determinations. If we disagree with the credibility determination, should we consider the testimony or should we send it back to the BIA? I think the immigration judge went on, and despite her credibility determination, she went on to the ultimate issues in this case. And normally, the government says that the Court has to send the case back to the immigration courts. But in this case, the immigration judge went on and made the ultimate findings in this case. So I think if the Court disagreed with the credibility determinations, you still have the alternative determinations made by the immigration judge. And if you disagree with the immigration judge that this alien is not a refugee, then in that case, you would just send it back for a determination on discretion on whether asylum should be granted. So again, normally, the government is arguing that you should and have to remand the case under Ventura. But in this case, the judge reached the ultimate conclusions in this case. And those ultimate conclusions in this case are supported by substantial evidence. If there's no further questions, Your Honor, I will. Government submits. Thank you very much. Roberts. I guess just a few points. First, clearly, the immigration judge did pay lip service to, you know, said the correct language with respect to the adverse credibility finding. This is not a case where the immigration judge did not say anything on the record to, quote, unquote, support for adverse credibility finding. But I do think that the record also shows that this is not a case when you hear the adverse credibility finding, you sort of have in your mind a judge sitting up on a bench and, you know, sort of, you know, looking at the demeanor of the witness. And that's not really what happened in this case. I think you had an immigration judge who, you know, went on the offensive and attacked the credibility and made it very difficult, again, for counsel and for the witness to present their – essentially present their story. Were you attacking or were you just trying to sort things out and move the interrogation along? Well, from the position of the – if I had been in the shoes of the attorney of Mr. Liu, I would have viewed it as attacking, you know. I think, you know, there were – certainly it wouldn't be the first time that a trial judge or an immigration judge, you know, expressed maybe perhaps something from the not unlike the Garabias case, it sort of stepped over the line. In what? Can you point to anything specific? I think with respect to the – particularly with the dates and the comment that, you know, don't try to – I think it's something like don't try to remember the – you know, don't try to remember the dates that you memorized, things of that – things like that. I mean, I view as being more. She ultimately said in the decision that – or the IG ultimately said that the dates really didn't make a – weren't going to make a difference on the credibility issue, right? I guess. I mean, although it certainly is a big issue on appeal and the attorney was raised, you know, and I – with respect to the dates, I do think it's a little bit like the Wong case that, you know, where in that case, W-A-N-G, where the lady couldn't remember certain dates with respect to the sterilization and the court, you know, said that that should not have been an issue. So – But the dates aren't immaterial here. Doesn't it make a big difference as to whether the mother was sterilized before or after he was expelled? I would say that is correct, but not remembering, you know – unfortunately, in my experience, I've had witnesses not remember or have difficulty testifying, oh, it was this year versus that year, and again, you know, you're dealing with obviously, regardless of demeanor, regardless of what the immigration judge found, I don't think there's any – it shines through the record that this witness was extremely nervous. Now, nervous for what reason is sort of the crux of the thing, but I would say nervous because of the – his age, because of the – because of the, you know, the attitude of the immigration judge, and just nervous because he's in a foreign court in a foreign land. So, I mean, I do think that that's – and also with respect to returning it to the BIA, you know, I think if we had something from the BIA as to, you know, how much they considered the adverse credibility determination as opposed to the testimony, then perhaps you all could make a better informed decision as to what the BIA was thinking when it evaluated the transcript. But we don't have that. There's nothing from the BIA. Well, we just evaluate the I.J.'s – the I.J.'s decision as the decision of the board here. And in that regard, I think that there's – you know, there's – again, there's – he's got three issues with respect to the asylum, and I think that, you know, when there's certain things with respect to the, you know, this relationship between these two groups, the Tiananmen Generation and the International Federation of Chinese Students, you know, not being able to explain what the difference was or the relationship, I mean, unfortunately, I think most 17-year-olds in this country couldn't – would have difficulty explaining what the difference between a Republican and a Democrat is other than, you know, who you're voting for for president. So – But he wasn't a young Democrat, was he? He was – in either of these organizations, his participation didn't rise to that level, did it? Not at the time of the hearing. That's – you know, I mean, he had just gotten here and, you know, they said that his participation was going to have to be – to be gradual. So we're sort of left with an unfinished story there. I also think that with respect to the country report or the – I guess it's the asylum report saying that students returning to China who have been involved in the democracy or anti-Chinese movement here had never – there's no history of them being persecuted. I think that that's sort of a different situation than what his situation is. I mean, those are people who have come to study here, presumably legally, and then get involved with a democracy movement and come back legally. And I don't – that's not – that's not Mr. Chin's situation, unfortunately. You've exceeded your time. Thank you. Okay. So the next case on the calendar, Tianli Zhang, is submitted on the briefs. So then we will go to Yuliang Chen.
judges: Noonan, Paez, Selna